IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SMI-OWEN STEEL CO., INC. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-00-149 |
| | § | |
| ST. PAUL FIRE & MARINE INSURANCE | § | |
| CO. and J & H MARSH McCLENNAN, | § | |
| INC. | § | |

**ORDER**

Before the Court by consent of the parties are two Motions for Summary Judgment filed by Defendant J & H Marsh McLennan, Inc. ("Marsh") against Plaintiff SMI-Owen Steel Co., Inc. ("SMI").

**Background**

In December, 1997, SMI, a custom steel fabrication company, contracted with Fluor Daniel, Inc. ("Fluor") to design, furnish, and erect steel planks and concrete slabs to be used in the construction of the Aladdin Hotel & Casino in Las Vegas, Nevada ("the Hotel"). Fluor was the general contractor for the project.

According to Plaintiff, Fluor designated Marsh, an insurance broker, to create, develop, and administer an insurance plan consisting of a variety of insurance policies. This encompassed a "wrap up" insurance scheme called the Controlled Insurance Program ("CIP") issued by St. Paul Fire & Marine Insurance Co. ("St. Paul") and obtained by Fluor on behalf of its enrolled subcontractors. SMI alleges that Marsh represented to it that all subcontractors such as itself received a variety of insurance policies under the CIP, including commercial general liability coverage, professional

1

liability coverage ("PL"), pollution liability coverage, subcontractor default coverage, and excess liability coverage. Based on this alleged representation, SMI believed that it had all necessary coverage for any defaulting subcontractor and that it was covered by PL against any claims against it for defective design functions in the Hotel project. SMI claims that it therefore did not obtain separate bonding from its principal subcontractor, Black Hawk, which eventually defaulted. Other subcontractors also defaulted on their obligations to SMI. St. Paul subsequently took the position that SMI was not covered under the CIP. Fluor also asserted claims against SMI related to design issues that were not covered under the CIP.

The Hotel filed arbitration proceedings against Fluor, which also made various arbitration claims against SMI. SMI then brought this suit against St. Paul and Marsh (and has settled with the former) alleging breach of contract, breach of duty of special confidence imposed on an insurance plan administrator, negligence, breach of insurance contracts, and negligent misrepresentation. Fourth Amended Complaint. It also brought a claim pursuant to Texas' Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code. Marsh also filed a DTPA counterclaim against SMI and brought the instant Motions seeking summary judgment.

## Discussion

### The DTPA Motion

Marsh first seeks summary judgment on a counterclaim it brought against Plaintiff under Texas' DTPA statute. Tex. Bus. & Com. Code §§ 17.01 ff. Marsh claims that SMI did not have standing under the statute to assert its own DTPA claim against Marsh because SMI's assets exceed $25 million and that Marsh is therefore entitled to attorney's fees. The District Court dismissed SMI's DTPA claim two years ago after it determined that Nevada law, not Texas law, governs this case. Marsh recognizes this fact but still argues that Texas' DTPA statute allows it to recover attorney's

fees. It cites no Nevada caselaw that would allow such recovery under the statutes of another state and provides no argument or authority as to how this Court could apply the substantive law of the DTPA when Texas law is not applicable. Nor has Marsh argued that Texas law controls the recovery of attorney's fees in this matter, even though Nevada law governs the substantive provisions of the claim.

Even if such a showing could be made, Marsh has not demonstrated how its attorney's fees related to the DTPA claim could be segregated from those connected to other claims in this case or what the fees actually are. Texas law places the burden of proof on the party seeking attorney's fees and requires it to show what costs have been incurred. *Stewart Title Guarantee Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

For these reasons, Marsh's Motion for Summary Judgment on the DTPA issue (Instrument No. 198) is **DENIED**.

Marsh's Motion for Summary Judgment

*Breach of Insurance Contracts, Breach of Contract, Special Duty of Confidence, and Negligence*

SMI alleges that Marsh breached an insurance contract, breached an agreement with it on which SMI detrimentally relied, violated a duty of special confidence imposed on an insurance plan administrator, and was negligent in its role as broker and administrator. Marsh first seeks summary judgment on SMI's allegation that it breached the CIP. Although Marsh does not clearly distinguish between SMI's claim that Marsh breached its contract to obtain insurance and breached the relevant insurance contracts, these claims involve closely-related facts. According to SMI, Marsh was the administrator of the Wrap-Up insurance scheme and acted as a joint venturer with St. Paul. For that reason, according to Plaintiff, Marsh is jointly liable with St. Paul for alleged contractual violations.

Like most states, Nevada allows only parties to a contract to be held liable on it. *County of Clark v. Bonanza No. 1*, 615 P.2d 939, 943 (Nev. 1980). Nevertheless, an exception exists where a claims administrator is engaged in a joint venture with an insurer. *Albert Wholers and Co. v. Bartgis*, 969 P.2d 949, 959 (Nev. 1999). Such a joint venturer can be held liable for its bad faith handling of an insured's claim. A joint venture involves a contractual relationship in the form of an informal partnership where two or more persons conduct a business enterprise and agree to share profits and losses jointly, or in proportion to their capital contribution. *Radaker v. Scott*, 855 P.2d 1037, 1040 (Nev. 1993). Indicia that an insurance broker is involved in a joint venture with the insurer include the development of promotional material, issuance of policies, billing and collecting premiums, paying and adjudicating claims, and having some pecuniary interest in optimizing the insurer's financial interests. *Bartgis*, 969 P.2d at 959.

After carefully considering the parties' evidence, the Court finds that Plaintiff has raised an issue of material fact that precludes summary judgment on this issue. Marsh argues that none of the *Bartgis* factors are present here and that it acted only as a broker for Fluor. Nevertheless, Marsh developed promotional material for Fluor in the form of the Contractor's Handbook, which explained the terms of the insurance program to the subcontractors. Plaintiff's Evidence, Ex. 5. Marsh also argues that it acted only as a broker for Fluor and not for the subcontractors. Plaintiff, however, offers deposition evidence from Fluor's risk manager, Ed O'Dwyer, stating that he believed Marsh acted as a broker for SMI itself and that SMI submitted claims and documentation directly to Marsh. Plaintiff's Ex. 15 at 104-05, 112.

Marsh further argues that it cannot be construed to have been an "administrator" of the insurance contract. Neither party defines the legal parameters of that term under Nevada law or how it applies in this case. However, the Handbook lists Marsh representatives as the Project Insurance

4

Administrators and as the Broker Claim Representative. Id., Ex. 5 at 3. The Handbook defines the latter position as "a representative of the Claims Administrator." Id. at 4. Although Marsh asserts that this does not make it a contract administrator, Defendant does not clearly define what, in fact, these terms mean or what its precise duties were. In addition, Marsh's claim that the fact it received a commission from St. Paul for the policies it underwrote "does not prove a financial relationship with Marsh," Reply at 7, misstates the legal standard to be used in this proceeding. Plaintiff is not required to prove its case in order to survive summary judgment; it need only raise an issue of material fact. Fluor representative Ed O'Dwyer states that "there were bonuses and incentives provided by insurance companies" that Fluor did not fully grasp. Plaintiff's Ex. 15 at 144.

Marsh alleges that it had no pecuniary interest in maximizing St. Paul's gains or reducing the company's exposure risks. SMI points to a March 5, 1998, letter from St. Paul to Marsh in which regional manager James Conroy states that the insurance company Marsh was negotiating with "want[ed] to play the partnership card" with Marsh and requested it to make alternate coverage proposals to Fluor. Id. at Ex. 14. This appears to be less than compelling evidence of the kind of partnership required for a joint venture, but Marsh has failed to address the meaning of the letter in any way or to explain why its financial interests in placing different policies suggested by St. Paul were not affected by its "partnership" with the insurance company. While none of the evidence SMI has produced conclusively demonstrates that Marsh was involved in a joint venture with St. Paul, the Court must construe the facts in favor of Plaintiff. *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Marsh has not shown as a matter of law that no such joint venture existed.

Marsh also argues that SMI cannot demonstrate that a contract existed between the two parties to procure insurance for SMI. The essence of SMI's cause of action is that Marsh entered into an agreement with it to procure all the required insurance for SMI and that Plaintiff relied on that promise

5

to its own detriment.  Nevada courts have recognized that "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989).

Marsh alleges that SMI's third-party beneficiary claim fails as a matter of law and cites *In re Estate of Kern*, 823 P.2d 275 (Nev. 1991).  That case involved an estate's standing to bring suit under Nevada's probate laws and is inapplicable here.  Marsh also argues that its agreement to obtain insurance was only made with Fluor and that it never represented to SMI that it would do so for it. In rebuttal, SMI cites the following evidence:

> (1) Marsh prepared an Insurance Information Booklet on March 5, 1998 stating that all enrolled subcontractors on the Hotel project would be covered by the CIP and that they would not be responsible for any insurance deductibles.  The Booklet advised subcontractors that PL insurance would be provided in the amount of $5 million. Plaintiff's Ex. 7.
>
> (2) notes indicate that Marsh executive David Risko told SMI in an April 2, 1998 meeting that it did not need PL insurance. Id. at Ex. 18.
>
> (3) Marsh prepared a Contractor Handbook stating that all enrolled subcontractors were covered by the CIP and that it included PL insurance. Id. at Ex. 5.
>
> (4) the Certificate of Insurance issued on October 7, 1998, which listed Marsh as the "procurer," stated that SMI was an additional insured covered by a PL policy. Id. at Ex. 13.

Marsh objects that Fluor, not it, prepared the Insurance Information Booklet and the Contractor Handbook.  However, the Handbook's cover clearly states that it was prepared by Marsh. Id. at Ex. 5.  Marsh also urges that SMI would not have been covered for the defense of its arbitration claims even if PL insurance had been obtained and that, as a result, Marsh has no liability.  However, it points only to a notice from St. Paul indicating that the policy placed with that insurance company would have yielded such a result.  Plaintiff's Motion at 18.  No evidence supports the broader

allegation that the kind of insurance SMI claims Marsh agreed to provide was unobtainable from any company as a matter of principle.

Finally, Marsh claims that it owed no duty to SMI to procure PL insurance because Fluor, not it, entered into a contract with SMI. It also claims that SMI's negligence allegation fails for the same reason. As stated above, however, the summary judgment evidence is not sufficient to say that the contract and insurance contract issues fail as a matter of law. Marsh supports its argument with citations to the law of Texas, Massachusetts, Louisiana, New York, Wyoming, and Montana but does not reference the only relevant state – Nevada. It may be that Nevada law is unclear on this point. If so, a federal court must determine under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) what the highest court of that state would decide if presented with the issue at hand. *Coatings Mfg., Inc. v. DPI, Inc.*, 926 F.2d 474, 479 (5th Cir. 1991). Neither party has provided any guidance on this issue, and summary judgment is not appropriate at this point.

Marsh may have owed no duty to SMI at all, just as there may have been no contract between the parties. However, Marsh has not carried its burden to show that no issue of material fact exists on these questions. Its Motion for Summary Judgment is therefore **DENIED** on all issues related to Plaintiff's claims of breach of contract, breach of insurance contract, the duty of special confidence imposed on an insurance plan administrator, and negligence.

*Statute of Limitations*

Marsh next claims that SMI's negligent misrepresentation claim is barred by Texas' two-year statute of limitations. The Fifth Circuit has found that under the circumstances of this case, Texas' own statute of limitations applies even when the law of another state governs substantive issues. *Cox v. McDonnell-Douglas Corp.*, 665 F.2d 566, 571 (5th Cir. 1982). In light of the Court's ruling on the negligent misrepresentation issue, Defendant's Motion for Summary Judgment is **DENIED AS MOOT**

on the limitations issue.

*Negligent Misrepresentation*

SMI alleges that Marsh negligently misrepresented to it that SMI had PL coverage. As SMI admits, the District Court found that only SMI's alleged reliance on the October 7, 1998, Certificate of Insurance is at issue in this claim. According to Marsh, SMI could not have reasonably relied on the Certificate before it entered the contract with Fluor because the Certificate gave no assurance of PL coverage and was issued after the Fluor contract was executed.

Nevada has adopted the standard for negligent misrepresentation stated in § 552 of the Restatement (Second) of Torts. A plaintiff must establish that: (1) the defendant provided information in the course of its business, or in a transaction in which it had a pecuniary interest; (2) the information supplied was false and was given for the guidance of others in their business transactions; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered pecuniary loss proximately caused by its reliance. *See Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1470 (D. Nev. 1992).

Marsh argues that SMI could not have reasonably relied on the Certificate as proof it was covered by PL insurance. The Certificate lists the "insured" only as Fluor and ADP Marshall, Inc. Defendant's Ex. 28. It also states that SMI, as the Certificate Holder, "is included as an additional named insured as respects to the new Aladdin Hotel & Casino project . . ." and indicates that St. Paul had provided PL insurance under Policy No. K60320166 for $1,000,000 per occurrence and aggregate. However, the Certificate also contains the following language: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." The policy in question did

not include PL insurance for SMI.

Marsh argues that when a Certificate contains the limiting language found here, it does not control the insurance policy itself. Both parties rely on inapplicable Texas law. In Texas, the terms of an insurance certificate are ordinarily subordinate to the actual policy. *See TIG Ins. Co. v. Sedgwick James of Washington*, 184 F. Supp. 591, 597 (S. D. Tex. 2001). That is not the case in all states. *See*, *e.g.*, *Fittro v. Lincoln Nat. Life Ins. Co.*, 757 P.2d 1374, 1376 (Wash. 1988); *Domke v. Farmers & Mechanics Savings Bank*, 363 N.W.2d 898, 801 (Minn. 1985) (noting that the majority view does not favor the construction presented by Marsh). This Court's review of Nevada caselaw does not indicate that courts in that state have adopted a clearly-defined position on this issue. Neither party has presented arguments on why Nevada's courts would adopt the holdings of the Texas cases they cite.

Nevertheless, SMI could not have relied on the Certificate to enter the Fluor contract even if Nevada law permitted it to trump the policy's language. The Certificate was issued on October 7, 1998. SMI signed a formal contract with Fluor on August 7, 1998, after many months of negotiations, including a review of contract proposals in November, 1997, a letter of intent signed on December 8, 1997, and a Notice to Proceed on March 17, 1998. Defendant's Motion at 25-26. SMI does not dispute these facts. Instead, it argues that its reliance on the Certificate is actionable because it "confirmed" preexisting representations about PL coverage which, taken together with the Certificate, give rise to a misrepresentation claim.

However, the issue at stake is not what other representations Marsh may have made but whether SMI can demonstrate all the elements required for negligent misrepresentation based on the Certificate itself. If SMI's reliance was, in fact, based on prior assurances, those specific

9

representations should have been pleaded as a basis for the instant claim. Since the District Court has limited the misrepresentation issue to the Certificate, SMI must show justifiable reliance on the October 7, 1998, document.

It has not done so, and Defendant's Motion for Summary Judgment is **GRANTED** on the negligent misrepresentation issue.

*The Election of Remedies Issue*

Finally, Marsh alleges that the doctrine of election of remedies bars SMI from recovering any damages from it. Nevada law recognizes election of remedies as an affirmative defense consisting of three elements: (1) the existence of two or more remedies; (2) inconsistency between the remedies; and (3) choice of one or more of the remedies. *Second Baptist Church of Reno v. Polk*, 510 P.2d 630, 632 (Nev. 1973). Marsh argues that the doctrine bars the instant suit against it because SMI has already settled with St. Paul for its claims under the insurance policies. According to Marsh, SMI was required to choose one of two remedies: coverage under the policies or a claim for failure to procure them.

This argument is without merit. As stated above, Marsh is required to demonstrate how the Nevada Supreme Court would rule if faced with this fact scenario. Although Defendant notes that Nevada acknowledges the election of remedies, it does not explain the scope that doctrine has under Nevada law. The issue is more than theoretical. Virtually all states recognize the election of remedies but their interpretation of how it should be employed can vary. In some states, the doctrine is disfavored and applied only narrowly when deciding to exclude remedies. *See*, *e.g.*, *Ripple v. Wold*, 549 N.W.2d 673, 674 (S. Dakota 1996); *Bolinger v. Kiburz*, 270 N.W.2d 603, 605 (Iowa 1978).

As Marsh's own caselaw points out, that was largely true in Texas prior to *Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863 (Tex. 1977). *See Metroflight v. Shaffer*, 581 S.W.2d 704, 707-08

10

(Tex. App. - Dallas 1979). The *Metroflight* court noted that *Huckabee*'s departure from the traditional rule did not substitute "election of remedies in the traditional sense of a choice between two inconsistent remedies arising from the same state of facts." *Id.* at 709. Instead, it established a form of judicial estoppel based on inconsistencies "in the allegation of facts on which both right and remedy depend" rather than on a choice between two inconsistent remedies available as a result of the same wrong. *Id.* at 710. Since Marsh has not shown how Nevada courts would interpret the doctrine of election of remedies, its reliance on Texas law is misplaced.

However, even Texas law does not support Marsh's claim. Defendant essentially argues that SMI is trying to recover from it on the theory that it failed to procure insurance policies and that it has already recovered damages from St. Paul under the same theory. That is to say, SMI is allegedly claiming both that the relevant policies exist and that they were never placed by Marsh. This is plainly not the case, and Marsh does not direct the Court's attention to any specific portion of the pleadings. SMI's First Amended Complaint never alleged that Marsh failed to obtain insurance. Instead, it made claims under the "Subcontractor Default Protection" policy and specifically alleged that Marsh placed that policy. First Amended Complaint at ¶ 3.1.

After settling with St. Paul, SMI filed its Third Amended Complaint. Plaintiff here distinguishes between several different kinds of insurance policies, including the subcontractor default policy and the PL coverage. Third Amended Complaint at ¶ 3.3. SMI alleges that Marsh failed to procure the PL coverage; it does not allege that the subcontractor default coverage, which appears to be the basis of its settlement with St. Paul, was never placed. Indeed, the Complaint specifically states: "SMI contends that the Professional Liability policy would have afforded coverage for the claims asserted by Fluor Daniel and Aladdin Gaming against SMI in the Arbitration for defense and indemnity, had such been properly procured by Marsh as represented." Id. at ¶ 3.9.

11

Nor is SMI seeking a double recovery, as Defendant claims. SMI claims that the St. Paul settlement did not compensate it for more than $7 million in legal fees and expenses incurred in the arbitration and which allegedly would have been covered if SMI had obtained the PL coverage. Construing all facts and inferences in Plaintiff's favor, as required by the summary judgment standard, Defendant's Motion for Summary Judgment is **DENIED** on the election of remedies issue.

For all these reasons, the Court finds that Marsh's Motion for Summary Judgment (Instrument No. 195) is **GRANTED IN PART AND DENIED IN PART** and that its Motion for Summary Judgment on the DTPA issue (Instrument No. 198) is **DENIED**.

**IT IS SO ORDERED**.

**DONE** at Galveston, Texas, this ____17th____ day of May, 2005.

_____
John R. Froeschner
United States Magistrate Judge